William N. ALBUS, Appellant,

v.

L. Jane Crossman ALBUS, Appellee.

No. 84–1426.

District of Columbia Court of Appeals.
Argued Oct. 3, 1985.
Decided Jan. 14, 1986.

Elizabeth Guhring, Washington, D.C., for appellant.

Gerard F. Treanor, Arlington, Va., for appellee.

Before NEWMAN, FERREN and ROGERS, Associate Judges.

ROGERS, Associate Judge:

This is an appeal from the denial of a motion to reduce child support payments ordered in a proceeding under the District of Columbia Uniform Reciprocal Enforcement of Support Act (URESA), D.C. Code §§ 30–301 *et seq.* (1981). Appellant contends that the trial court erred in denying his motion because he produced sufficient evidence to support a reduction in his payments in accordance with the parties' voluntary separation agreement. Because the trial court applied the incorrect standard in denying the motion, we reverse and remand.

## I.

The parties were married in 1965 and had three children, a son and two daughters.

They separated in 1975. On April 15, 1977, they entered into a separation agreement which was incorporated into their divorce decree, dated May 10, 1977, in Prince George's County, Maryland. Appellee-mother was granted custody of the three children, and subsequently moved with the children to live in Vermont. When appellant-father failed to maintain his payment of child support under the separation agreement, appellee filed a petition on October 31, 1977, for support under the Vermont Uniform Reciprocal Enforcement of Support Act, Vt.Stat.Ann. tit. 15, §§ 385–428 (1974). The URESA certificate signed by a judge in Winlaw County, Vermont, transferred the petition to the District of Columbia where appellant lived and worked. On September 15, 1978, Judge Haywood of the Superior Court of the District of Columbia, ordered appellant to pay $563.00 [1] per month in child support "until further order of this Court."

On June 11, 1984, appellant filed a motion to reduce his child support payments based on a change of circumstances. By attached affidavit, he stated that on or before June 15, 1984, his son was eighteen years old and thus was emancipated, and was entering the armed forces of the United States, that the parties' 1977 separation agreement required monthly support for his son, until emancipated, in the amount of $300; and that therefore the 1978 URESA order entered by Judge Haywood should be reduced by $300. On July 30, 1984, appellant filed a second motion to reduce child support. By affidavit he restated the circumstances regarding his son and added that because his eldest daughter, Catherine, had decided to live permanently, beginning June 15, 1984, in the District of Columbia area with her aunt, the 1978 URESA order should be further reduced by the amount of $131 which he was required under the parties' separation agreement to pay for Catherine's support. Thus, appellant would pay only $132 per month as of

---

**1.** At oral argument appellant's counsel advised that $563.00 was the amount which appellant was required to pay under the parties' separa-

tion agreement after deducting his payments for other costs such as health and life insurance from his total obligation of $700.00 a month.

June 15, 1984. Appellee opposed the motion to reduce on the grounds that (1) the 1978 URESA order did not incorporate the parties' separation agreement; (2) the parties' settlement agreement called for $200 support for each of the two daughters; (3) Catherine's move to the District of Columbia was not a permanent move; (4) appellant's ability to pay had greatly increased; and (5) the amount of $132 in child support payments had no logical relationship to the 1978 order. On September 6, 1984, after a hearing, the trial court denied appellant's motion.

## II.

Courts must apply different standards for modifying child support provisions depending upon whether those provisions are contained in a court order or a voluntary agreement entered into by the parties in contemplation of divorce. When the court enters the original order of child support, the standard enunciated in *Hamilton v. Hamilton*, 247 A.2d 421 (D.C.1968), applies to motions for modification in the level of payments. Under *Hamilton*, the trial court must determine whether there was a

material change in the circumstances of the parties—a change which affects either the father's ability to pay or the needs of the minor children. Absent such a showing, the original decree is conclusive upon the parties. [citation omitted].

*Id.* at 422–23.

On the other hand, when the parties' voluntary separation agreement provides for a division of property and provision for support, and the agreement is incorporated, but not merged in the divorce decree, the standard enunciated in *Cooper v. Cooper*, 472 A.2d 878 (D.C.1984), applies to subsequent requests for modification. Then the trial court may modify child support pay-

ments set by a voluntary separation agreement only if

the party seeking modification shows (1) a change in circumstances which was unforeseen at the time the agreement is entered and (2) that the change is both substantial and material to the welfare and best interests of the children.

*Id.* at 880.

The *Cooper* standard affords little freedom to the court to change support provisions because it assumes that the parties voluntarily agreed to abide by the specific terms of a separation agreement. It is also based on the premise that at the time of the separation agreement the best interests of the children were a "paramount consideration." *Id.* Accordingly, the *Cooper* standard does not diminish the court's responsibility under D.C. Code § 16–916 (1981) to assure that adequate child support is provided. The *Cooper* court also observed that "the best interests of the children must be assessed in the context of the standard of living to which the children have become accustomed." *Cooper v. Cooper, supra*, 472 A.2d at 880–81.

The question presented in this appeal is whether a motion to modify child support payments ordered pursuant to URESA is subject to the *Hamilton* rather than the *Cooper* standard where there is a voluntary separation agreement. URESA provides that the judge in the receiving jurisdiction is required to make an independent determination of the level required for child support. D.C.Code § 30–315.[2] *Rittenhouse v. Rittenhouse*, 461 A.2d 465, 466 (D.C.1983). But URESA also places certain restrictions on the scope of that determination. Section 30–319 provides that

No order for support entered by the Court in any proceeding arising under this chapter shall supersede any previous order of support entered in a divorce or

---

**2.** D.C.Code § 30–315 provides in pertinent part: If the Court finds a duty of support as defined by this chapter it may order the defendant to pay such amounts under such terms and conditions as the court may deem proper.

"Duty of Support" is defined as including a duty imposed by statute or common law or by court order, "whether incidental to a proceeding for divorce ... or otherwise." D.C.Code § 30–302(5)(A).

separate maintenance action, or any other proceedings, but the amounts for a particular period paid pursuant to either order, when verified, shall be credited against amounts accruing or accrued for the same period under both.[3]

As interpreted in other jurisdictions, this provision requires that the payments due pursuant to a URESA order (within period of statute of limitations for judgments) be credited toward fulfillment of the parties' continuing obligations under a prior court order. *Foster v. Marshman*, 96 Nev. 475, 611 P.2d 197 (1980). *See Oglesby v. Oglesby*, 29 Utah 2d 419, 510 P.2d 1106 (1973); *Goldstein v. Goldstein*, 409 So.2d 1245 (La. Ct.App.1982); *Ainbender v. Ainbender*, 344 A.2d 263 (Del.Super.Ct.1975). These decisions are consistent with the recognition in the District of Columbia that URESA remedies are supplementary. *Schlecht v. Schlecht*, 387 A.2d 575, 578 (D.C.1978) (URESA fixes only the responsibility of the court of the state where the petition is filed to determine amount of the obligor's duty to support.); *Howze v. Howze*, 225 A.2d 477, 480, appeal dismissed, 385 F.2d 986 (D.C.Cir.1967) (URESA petition does not impair party's right to seek modification of divorce decree in state where decree entered).[4]

We hold that the 1978 URESA order was limited to a determination of the current needs of the children and did not modify the parties' obligations under their separation agreement. Therefore the amounts paid by appellant pursuant to the URESA order must be credited against his obligations under the parties' separation agreement. Further, since the URESA order did not purport to, and under D.C.Code § 30–319 could not, modify the parties' separation agreement, the trial court should have applied the *Cooper* standard in determining whether to grant appellant's motion to reduce his child support payments. Under the circumstances, appellant's motion is properly viewed as seeking specific enforcement of the parties' separation agreement, and not as seeking to modify the URESA order. The court was, therefore, obligated, subject to its statutory responsibility under D.C.Code § 16–916, to grant specific enforcement of the parties' agreement in the absence of evidence that there has been an unforeseen change of circumstances which is "substantial and material to the welfare and the best interests of the children." *Cooper v. Cooper, supra,* 472 A.2d at 880. *Cf. Howze v. Howze, supra,* 385 F.2d at 987 (" 'decree for child support is *res judicata* only as long as the circumstances remain the same as when the decree was rendered' " (quoting 24 Am. Jur.2d. Divorce & Separation § 846, p. 959 (1966)).

Appellant testified that the parties' separation agreement provided that his duty to support would cease when a child became emancipated and would decrease whenever appellee failed to provide the necessities for a child's support and appellant provided them.[5] He also testified that he was pay-

3. The Vermont URESA statute also provides that payments made pursuant to a URESA order are to be credited against obligations arising under a prior court order. Vt.Stat.Ann. tit. 15 § 419. However, the Vermont provision authorizes a judge entering a URESA order to modify a prior order where the intention to do so is expressly stated. Vt.Stat.Ann. tit. 15 § 419. No such specification is at issue here.

4. In *Howze v. Howze, supra,* the petitioner sought in a petition filed under URESA to increase child support payments above the amount provided in the divorce decree. Accordingly the court held that it was apparent petitioner was relying on the laws of the District of Columbia to impose a duty of support and no longer relying on the divorce decree. In the instant case, appellant's URESA petition referred to appellant's arrearages under their separation agreement.

5. The parties' separation agreement is not a part of the record on appeal. According to appellant's brief, the separation agreement provides in pertinent part:

B. Said payments with respect to each child shall cease and terminate upon the first to occur of any one of the following events as to any such child: (i) arrival at age eighteen (18); (ii) becoming entirely self-supporting or emancipated; (iii) death of said child; or (iv) a child living permanently with the Husband.

ing for Catherine's support while she was living with her aunt, and that he was willing to pay whatever was required to provide adequate support for their other daughter, age thirteen. Appellee did not dispute that the parties' son had become emancipated upon turning eighteen years old and testified that although she did not plan to contribute to Catherine's support while she was temporarily living with her aunt, she would have expenses associated with "keeping the roof over her head."

 The trial court's oral findings [6] viewed the 1978 URESA order as an original determination by the court of the level of child support, and applied the *Hamilton* standard. The court found that no basis existed for a reduction since appellant has the ability to pay, the youngest daughter remains with appellee, and the eldest daughter's stay in the District of Columbia is for one-year only. It concluded that appellant remained bound by the 1978 URESA order and owed $1,331 in arrears. Although the record indicates that the court read the parties' separation agreement, its existence is not referred to in the court's findings or order denying appellant's motion.[7] Nor do the court's remarks at the hearing suggest that it viewed appellant's motion to reduce child support as a motion for specific enforcement of the parties' separation agreement.

Because the trial court applied the incorrect standard by failing to give appropriate consideration to the parties' separation agreement, and in view of the inadequacies in the record before us, we reverse and remand for further proceedings. Upon remand the trial court shall determine whether the changes set forth in appellant's mo-

tion to reduce child support were contemplated in the parties' separation agreement; if so, then the court must determine whether appellant is entitled under the agreement to a reduction in his child support payments, and in what amount; and finally the court must determine, consistent with its obligation under D.C.Code § 16–916, whether that amount would threaten the best interests of the parties' children in accordance with the *Cooper* standard.

*Reversed and Remanded.*

---

* * * * * *
H. In the event the Wife fails to provide necessities for the children such as shoes, clothes or food, the Husband may furnish same and deduct the amount from the appropriate monthly payment.

6. Trial courts usually are obligated to make written findings in cases involving a modification of child support. *Powell v. Powell,* 457 A.2d 391, 394 (D.C.1983) (Because trial court must balance many factors in ordering modifi-

cation of child support, specific findings are necessary for reviewing court to ascertain whether the trial court considered all relevant matters and how it resolved conflicting claims); *Sheridan v. Sheridan,* 267 A.2d 343, 345 (D.C. 1970); Super.Ct.Dom.Rel.R. 52(a) (1981).

7. *Cooper v. Cooper, supra,* was decided six months prior to the hearing on appellant's motion and the order denying the motion.